## THE DAVID EVANS.

(Circuit Court of Appeals, Ninth Circuit. May 22, 1911.)

No. 1,924.

1. ADMIRALTY (§ 28*)—ACTION IN REM—BREACH OF SHIPPING ARTICLES BY MASTER.

A seaman may maintain an action in rem against the vessel for breach of the shipping articles, in that the master did not treat him with proper kindness, but assaulted him.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 278–288; Dec. Dig. § 28.*]

2. SEAMEN (§ 30*)—SHIPPING ARTICLES—BREACH—TREATMENT BY MASTER.

Libelant, who was a seaman, became intoxicated while on shore leave, and on his return to the ship was violent and very abusive toward the captain, refused to go forward when ordered, and resisted when the captain and mate undertook to lead him. The captain then procured a pair of handcuffs, but, when he attempted to put them on, libelant struck him in the face two or three times, and he then struck libelant on the head with the handcuffs, inflicting slight injuries. *Held*, that the captain's assault was justified, as repelling an attack in defense of his own person,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and did not entitle libelant to recover from the ship for breach of contract.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 195–211; Dec. Dig. § 30.*

Discipline and punishment of seamen, see note to The John and Winthrop, 106 C. C. A. 8.]

Appeal from the District Court of the United States for the Territory of Hawaii.

Action in admiralty by Allain Pasquion against the schooner David Evans; Frank T. Sanders, master, bailee, and claimant, and the Pacific Shipping Company, owner. Decree for respondents, and libelant appeals. Affirmed.

George A. Davis, for appellant.
Alexander R. Baldwin, for appellees.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. The libelant, a seaman under shipping articles with the schooner David Evans, feeling himself aggrieved by the treatment of the master, instituted a libel in rem to recover damages for breach of contract, and for release from his articles. The schooner, laden with lumber, after completing a voyage from Aberdeen, Wash., to Honolulu, Territory of Hawaii, was at anchor in Pearl Harbor. On September 14, 1910, and while libelant was on board the vessel, it is alleged that the master, Frank T. Sanders, in violation of the shipping articles, and without any lawful cause or excuse, brutally assaulted, beat, and wounded libelant, by striking him upon his head with a piece of iron or steel, and inflicting a large and dangerous wound thereon, from the effects of which libelant became insensible for a time. In going ashore, except by small boat, the passageway was constructed of boom timbers 12 inches square, two of which were fastened together side by side, thus making a walk of 24 inches in width. The walk was more or less slippery, caused from contact with the sea water.

The facts leading to the encounter upon which the alleged assault is predicated are in brief as follows: On the morning of the 14th the libelant obtained shore leave from the captain, claiming that he was sick, that he had hurt himself lifting heavy timbers, and wanted a discharge from his service. The captain told him that he would give him a hospital permit to see the doctor, and that if he was sick he would pay him off. On coming ashore later, the captain left a hospital receipt for libelant with the United States shipping commissioner, and then went to the marine doctor and requested him to examine libelant, to ascertain whether he was really ill. Libelant went to the doctor, and it seems the doctor certified that libelant was not sick. Meeting the captain on the street, libelant began to curse and abuse him; but the captain, declining to have any difficulty with him, walked away, and returned aboard his vessel. In the evening, near 6 o'clock, while the captain was at supper with guests, including ladies, the libelant re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

turned to the boat. He had evidently been drinking while ashore, and in attempting to walk the boom timbers fell in the water, but was rescued by one of the ship's crew, who was at the time in bathing. As libelant came up the gang plank, he was thoroughly out of humor, and began swearing, and using the most violent, obscene, and indecent language toward the boat and its management. The second mate, who was at supper with the captain and guests, hearing the disturbance, went to the upper deck to stop it. He found libelant on the poop deck, still indulging his temper, and wanting to know why the captain did not put out a boat to accommodate the crew in going ashore. Presently the captain came up, and ordered him forward to the forecastle, applying a strong epithet somewhat common among seamen. Some words passed between him and the captain, when the latter directed the mate to take him forward. The mate, obeying orders, took libelant by the arm to conduct him forward, but with little success. The captain then took him by the other arm, and together they led him to the break of the poop, where he turned his abuse upon the captain, applying to him most foul and indecent epithets. The captain thereupon ordered him from the break of the poop, and at the same time jumped down, and told libelant that if he did not go forward he would put him in irons. Libelant, however, persisted in his demeanor, and the captain went to his cabin, secured a pair of handcuffs, and brought them back with him. By this time libelant had been urged forward on the deck to about midship, and when the captain came up he ordered libelant to hold up his hands. Instead of doing so, however, he struck the captain in the face with his fist one or two blows, having in his hand at the time a couple of pieces of lath he had picked up on the deck. There is some uncertainty as to whether he struck with his fist or with the lath. Thereupon the captain struck libelant three or four quick blows on the head with the handcuffs. The blows were not violent, but quick and short. and were designed to repel libelant's attack. Libelant's scalp was cut in two or three places, and blood came from the wounds. Two of the crew then conducted him to the forecastle, but before going libelant went back again upon the poop and got his coat, which he had left there before the officers came on deck. Libelant's wounds healed quickly, and no serious results came from them.

The evidence touching the assault and counter attack is very conflicting, but the foregoing statement of the facts is fairly deducible from that which we consider the most reliable, and the liability of the vessel must be determined therefrom.

[1] It is urged on the part of the respondents that the action in rem will not lie for assault and battery, under admiralty rule 16. This action, however, is not technically of that kind, but is rather for a breach of the shipping articles, in not treating the libelant with proper kindness. In such a case the action may be in rem. Benedict's Admiralty (3d Ed.) § 309.

[2] As to the merits of the controversy, the master of a vessel has the undoubted authority to preserve order and decorum aboard, and it is the duty of the crew to obey his reasonable orders and directions. Were this not so, it would not be possible to properly manage the

crew. Libelant was more or less intoxicated, was violent and very abusive, and it was clearly his duty to have obeyed the master's order to go forward to the forecastle. After directing him to go forward, the captain then directed the second mate to take him forward, but he was unable to do so. The captain then took him by the arm to assist the mate, and both together made but little headway. It was then thought necessary to get the handcuffs, and it was when they were brought that the encounter took place, libelant striking the captain first, following which were the blows from the captain. The case was one of obstinate insubordination. Had libelant obeyed orders, there would have been no assault, or had he gone with the mate and captain quietly, the result would have been peaceable. Nor was it until libelant struck the captain that the latter committed the assault complained· of upon him.

True, flogging and all other forms of corporal punishment are prohibited aboard a vessel, and rightfully so. The assault, however, was not made in the way of administering punishment, but in defense of the captain's person while in the exercise of lawful authority and the discharge of his duty. It is not apparent that the captain used more force than was necessary to repel the attack upon him, and libelant was but slightly injured by the blows he received. He and other witnesses testified that he was rendered senseless. The story is incredible. He at once thought of his coat and its whereabouts, and procured it himself before going with the seamen, and was out again shortly after being taken to his room. On the 17th, three days after the encounter, he went to a doctor, and his wounds were found to be practically healed.

The assault is justified, not upon the authority of the captain to punish, but upon his right to repel the attack in defense of his person. This result is fully warranted under the testimony. In this view, the act of December 21, 1898 (sections 4596, 4597, R. S. [U. S. Comp. St. 1901, pp. 3113–3115]), requiring record of offenses committed at sea to be made in the logbook, has no application.

The decree of the court below should be affirmed, thus leaving the shipping articles in force, as to both the ship and the libelant.